IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

General Electric Capital Corp.,

Plaintiff,

Case No. 3:04CV7574

v.

ORDER

Steve Mox Trucking, Inc., *et al.*,

Defendants.

Plaintiff General Electric Capital Corporation (GE) brought suit alleging breach of contract, replevin, and specific performance against Steve Mox Trucking, Inc. (SMTI), Steve Mox, and Louis E. Kovanda. Jurisdiction exists under 28 U.S.C. § 1332.

Pending is GE's motion for partial summary judgment on its breach of contract claims, and GE's motions to strike portions of the Kovanda and Mox affidavits. For the following reasons, GE's motion for summary judgment shall be granted and the motions to strike will be overruled as moot.[1]

**Background**

SMTI is a trucking company. GE leases and finances equipment for its customers. GE entered into two "master lease" agreements with SMTI. Pursuant to these agreements, GE provided SMTI with financing for the purchase of, *inter alia*, tractors and trailers.

In November, 1997, Kovanda, then president of SMTI, entered into a personal guaranty to induce GE to finance SMTI's equipment. The finance agreement GE and SMTI entered into is referred to as the 1997 Master Lease.

---

[1] GE's motions to strike are rendered moot because a decision either way would not affect the outcome of this decision.

Two years later, Mox purchased SMTI from Kovanda. In January, 1999, Mox also entered into a personal guaranty to induce GE to finance additional equipment. This agreement is referred to as the 1999 Master Lease Agreement.

SMTI later filed bankruptcy and assumed the 1999 Master Lease Agreement (1999 MLA). It entered into two stipulations regarding the 1999 MLA.

In June, 2002, SMTI defaulted under both of the stipulations. At this time, GE claims the stipulated loss values and late fees under the 1999 MLA totaled $857,229.10. In September, 2004, GE recovered eight tractors, which it later sold at public auction in October, 2004. The proceeds from this sale totaled $52,825. GE received insurance proceeds for a ninth tractor in the amount of $29,150. GE claims it never recovered a tenth tractor leased under the 1999 MLA.

GE argues it is entitled to summary judgment against SMTI, Mox, and Kovanda for breach of contract with damages totaling $775,254.10.[2]

**Discussion**

Both Kovanda's and Mox's individual guaranties contained, *inter alia*, the following language:

> To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to Steve Mox Trucking, Inc., a corporation organized and existing under the laws of the State of Ohio ("Customer"), but without in any way binding you to do so, the undersigned for good and valuable consideration, the receipt and

---

[2] GE claims its damages are the difference between the 1999 MLA stipulated loss value and the combined total of the auction proceeds and the insurance proceeds. This amount totals $775,254.10, not $775,244.10, which is the amount requested in GE's motion. Therefore, this court construes the proper amount of requested damages as $775,254.10.

> sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, *the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter*, whether evidenced by an Account Document, on open account, or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever *that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter* (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned.

(Pl.'s Exhibits D and E) (emphasis added)).

Both Kovanda's and Mox's guaranties also specified that the "Guaranty may be terminated upon delivery to you [GE] (at your address shown above) of a written termination notice from the undersigned." (*Id*.).

Each guaranty, moreover, contained a waiver provisions that provides:

> The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other documents; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or

> otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

(Pl's Exhibits D and E).

A guaranty is construed like a contract. *MidAm Bank v. Dolin*, 2005 WL 1532622, *8 (Ohio Ct. App. 2005). If a guaranty's terms are clear and unambiguous, a court does not construct its meaning. *Med. Billing, Inc. v. Med. Mgmt. Sciences, Inc.*, 212 F.3d 332, 336 (6th Cir. 2000). A guaranty, however, "does not become ambiguous because the enforcement of its terms will cause hardship to one of the parties." *New Mkt. Acquisitions, Ltd. v. Powerhouse Gym*, 154 F. Supp. 2d 1213, 1220 (S.D. Ohio 2001). A party can waive its future legal defenses against enforcement of a guaranty as a term within the guaranty. *Buckeye Fed. Sav. & Loan Ass'n v. Guirlinger*, 62 Ohio St.3d 312, 316 (1991).

Neither Mox nor Kovanda dispute the clarity of the language within each guaranty. Thus, this court will look to the language of both guaranties to resolve the matter at hand.

In support for its motion for summary judgment, GE provides evidence that SMTI defaulted under both of its lease agreements. Thus, GE contends both Kovanda and Mox are personally liable in the amount of $775,254.10 plus late fees and interest pursuant to their personal guaranties.

**I. Kovanda**

Kovanda argues: 1) he never intended the personal guaranty to continue after he sold SMTI to Mox in 1999; and 2) he is not liable after he sold the business in 1999 because his personal guaranty is not supported by consideration.

"Generally, courts will not inquire into the adequacy of consideration once it is found to exist, except in cases of fraud or unfair treatment." *MidAm Bank*, 2005 WL 1532622 at *11. Kovanda entered into the personal guaranty to induce GE to finance equipment for SMTI. Under the terms of his guaranty, Kovanda promised to pay GE any sum of money that SMTI may owe to GE "now or at any time hereafter." (Pl's Exhibit E). Although Kovanda may be unhappy with the terms of his guaranty, such unhappiness does not undermine the adequacy of the consideration he received. *MidAm Bank*, 2005 WL 1532622 at *12. Thus, Kovanda's personal guaranty is supported by adequate consideration.

Kovanda also asserts his sale of SMTI to Mox released him from the obligation under his guaranty. In support, he testifies that his attorney requested GE to release him from the guaranty.

The guaranty expressly mandated that Kovanda needed to send a written termination notice to GE for his release. Kovanda provides no evidence that he sent the required written termination to GE. Therefore, he fails to demonstrate a genuine issue of material fact remains in dispute.

Accordingly, summary judgment is appropriate. Kovanda is liable pursuant to the terms of his guaranty.

**II. SMTI and Mox**

Mox and SMTI argue on summary judgment that a material dispute of fact exits regarding the balance due under both leases and ask this court to equitably waive the personal guaranty because GE acted in bad faith.

As an initial matter, Mox waived any defense regarding the commercial reasonableness of GE's disposition of the equipment in his personal guaranty. Mox's guaranty provides the "obligations under this Guaranty shall be primary, absolute, continuing and unconditional,

irrespective of and unaffected by . . . the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations." (Pl's Exhibit D). Mox, moreover, acknowledges that this defense can be waived.

While Mox waived this argument, SMTI did not. SMTI argues that GE's sale of the capital was untimely. In support, SMTI provides both Mark Miller's affidavit testimony and letters that indicate a buyer was interested in purchasing the surrendered collateral two years before GE sold it at public auction.

GE responds that it sold the collateral in a commercially reasonable manner at public auction in October, 2004.

On this court's request, both parties provided a supplemental stipulation that disposes of this issue. GE seeks damages for breach of the 1999 MLA. Both parties agree that SMTI surrendered the collateral under the 1999 MLA in September, 2004, and that GE sold this collateral on October 20, 2004. The parties also agree that a sixty-day time period for resale is commercially reasonable. Therefore, GE disposed of the collateral in a commercially reasonable time period.

SMTI also argues GE never responded to its request for an accounting under R.C. § 1309.210. SMTI, however, fails to provide evidence that it made a request for an accounting or GE failed to comply. Therefore, no dispute of material fact remains regarding this issue.

Next, Mox and SMTI contend GE acted in bad faith. Mox and SMTI, however, fail to offer evidence that supports this contention. If an opposing party provides a supported motion for summary judgment, a non-moving party must respond with admissible evidence that a genuine issue of material fact remains. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Thus, this argument is unpersuasive.

Therefore, Mox and SMTI fail to demonstrate a genuine dispute of material fact remains for trial. Accordingly, summary judgment is warranted.

**Conclusion**

For the foregoing reasons, it is therefore,

ORDERED that General Electric Capital Corporations motion for partial summary judgment be, and the same hereby is granted; General Electric Capital Corporation's motions to strike are overruled as moot.

The Clerk shall enter judgment in favor of GE accordingly.

So ordered.

/s/James G. Carr
James G. Carr
Chief Judge